E. G. SENTER, JR., V. DIXIE MOTOR COACH CORPORATION.

No. 6722.   Decided November 19, 1936.
Rehearing overruled January 6, 1937.
(97 S. W., 2d Series, 945.)

*E. G. Senter,* of Dallas, for plaintiff in error.

*Seay, Seay, Malone & Lipscomb,* of Dallas, for defendant in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is an action instituted by E. G. Senter, Jr., against the Dixie Motor Coach Corporation, for the recovery of damages alleged to have resulted from an anticipatory breach of a certain lease contract. The case was tried before a jury, but at the conclusion of the testimony the trial court peremptorily instructed a verdict for the corporation, and judgment was entered accordingly. The jujdgment was affirmed by the Court of Civil Appeals. 67 S. W. (2d) 345.

The record discloses that the following facts were conclusively established by undisputed testimony:

On December 27, 1928, Senter and said corporation entered into a lease contract in writing, by the terms of which Senter leased to the corporation, for the term of five years beginning January 1, 1929, a certain one story brick building in Dallas, same to be occupied by the corporation as a garage and motor bus depot exclusively. The rental was made payable in advance monthly installments. Paragraph five of said contract reads as follows: "The lessee shall, in case of fire, give immediate notice to the lessor, who shall thereupon cause the damage to be repaired forthwith; but if the premises be by the lessor deemed so damaged as to be unfit for occupancy, or if the lessor shall decide to rebuild or remodel said building, the lease shall cease, and the rent be paid to the time of the fire." The building consisted of a concrete floor, four brick walls, a roof and the wooden frame work, consisting of joists, rafters, etc., upon which the roof covering was laid. A row of wooden posts or pillars, furnishing support to the roof and reaching from the floor to the roof framework, stood along the middle line of the building. There were no partition walls inside the building, and the building was equipped with electric wiring. The corporation went into possession of the building under the lease and paid all monthly rental installments as they accrued, up to and including April 1, 1930. On the night of April 4, 1930, the building was partially destroyed by fire. The roof

was destroyed, including all the frame work and supporting pillars; one of the brick walls was destroyed; the doors and windows and the electric wiring were destroyed. Two of the walls that remained standing were damaged to some extent, one of which was rendered by the fire unsafe for use. In a word, the damage to the building was of such character and extent as to render the building manifestly unfit for occupancy by the corporation as a garage and motor bus depot.

The day after the fire, the corporation notified Senter of the fire and repudiated the lease contract as remaining in operation. In addition to the facts above stated, which were conclusively established by the testimony, there was testimony to show the following facts:

(1) That the damage to the building was capable of being repaired within a reasonable time, and (2) that but for the conduct of the corporation in repudiating the lease contract as remaining in operation, Senter would have repaired said damage, and restored the building substantially to its former state, within a reasonable time.

The controlling question in the case is one of construction involving the following clauses of paragraph five of the lease contract which, for convenience, we shall mark and designate as clause No. 1 and clause No. 2 respectively:

(1) "The lessee shall, in case of fire, give immediate notice to the lessor, who will thereupon cause the damage to be repaired forthwith; (2) but if the premises be by the lessor deemed to be so damaged as to be unfit for occupancy * * * the lease shall cease." The ascertainment of the meaning of the above quoted language of clause No. 2 becomes necessary; the meaning of clause No. 1 is only incidentally involved. In view of the provision of the lease contract which provides in effect that the building was to be occupied by the corporation as a garage and motor bus depot exclusively, there can be no doubt that the quoted language of clause No. 2 has reference to such an occupancy. Nor can there be any doubt that the language of clause No. 1 was intended to be qualified by clause No. 2. Construed without reference to clause No. 2, the language of clause No. 1 would disclose an obligation on the part of the lessor to repair any and all fire damage to the building that is capable of being repaired within a reasonable time. But by clause No. 2, the contracting parties obviously intended, first, to qualify the language of clause No. 1 by excluding from its operation such damage as renders the building unfit for occupancy by the corporation as a garage and

motor bus depot; and, secondly, to make such unfitness effect a termination of the contract, without regard to whether the damage is capable of being repaired within a reasonable time or not. The very fact that the lessor was given authority to judge of the unfitness of the building for occupancy as provided in the contract, and thereby escape the operation of clause No. 1, necessarily implies that such unfitness was intended to effect a termination of the contract. The authority conferred on the lessor to judge in this respect calls for sound discretion involving good faith and due investigation. It was not intended that where, as was the case in the present instance, good faith and due investigation could lead to no other conclusion than that such unfitness had occurred, the lessor could, by concluding that same had not occurred, prevent the contract from terminating. In such a case, the contract would automatically come to an end, and, under the undisputed facts, that is what happened in the present instance. The corporation was well within its rights in afterwards repudiating the contract as remaining in operation.

The trial court did not err in instructing a verdict for the corporation. The judgment of the trial court and that of the Court of Civil Appeals are therefore affirmed.

Opinion adopted by the Supreme Court November 19, 1936.
Rehearing overruled January 6, 1937.