**Billie J. RHEA, Individually and on Behalf of Arthur F. Rhea and the Estate of Arthur F. Rhea, Appellants,**

**v.**

**Garry Lynn WILLIAMS and Reeder Distributors, Inc., Appellees.**

No. 2–89–231–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 9, 1991.

Rehearing Overruled Feb. 5, 1991.

Rickie L. Powell, J. Stewart Bass, Kugle & Frederick, Fort Worth, for appellants.

John H. Cayce, Jr., Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellees.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Billie Joe Rhea, individually and on behalf of Arthur F. Rhea, and the estate of Arthur F. Rhea ("Rheas"), sued Garry Lynn Williams and his employer, Reeder Distributors, Inc. ("Williams"). This lawsuit arose after a car driven by Billie Jo Rhea collided with a truck driven by Williams. Arthur Rhea, Billie Rhea's husband, was a passenger in the Rhea's car. He was severely injured. The Rheas filed suit against Williams' employer for damages arising from the collision. At trial, the jury found Billie Rhea was 77% the cause of the wreck and Williams was 23% responsible.

The jury responded positively to two questions of the trial court's charge. The questions inquired as to whether Billie Rhea was acting as the agent of Arthur Rhea and if the two were engaged in a joint enterprise when the accident occurred. The jury's affirmative responses to these two questions caused Billie Rhea's negligence to be imputed to Arthur Rhea and prevented the Rheas from recovering on all claims. The Rheas are appealing the take-nothing judgment rendered against them and raise the four following points of error: (1) that the trial court erred in submitting a jury question regarding agency since no evidence existed to warrant submitting the question; (2) the trial court erred in submitting a jury question concerning joint enterprise because the question was not warranted by the evidence; (3) the trial court abused its discretion when it overruled appellant's motion for new trial in that the jury's response to the agency

question was so against the great weight and preponderance of the evidence as to be manifestly unjust; and (4) it was an abuse of discretion to overrule appellant's motion for new trial because the jury's response to the joint enterprise question was so contrary to the great weight and preponderance of the evidence that it was manifestly unjust.

We affirm.

The record shows that sufficient evidence was produced to support the submission of these questions to the jury and the jury's findings were not contrary to the great weight of this evidence.

On May 23, 1985, the Rheas drove from their home in Mount Pleasant, Texas, to Fort Worth. The car Billie Rhea drove that day was owned by both the Rheas. The primary purpose of the trip appears to have been to deliver some papers to their tax consultant. While they were in Fort Worth, Billie Rhea did some shopping and Arthur Rhea got a haircut. While the Rheas were at the barber shop they learned that a shopping center was being built in an area near the property Arthur Rhea had leased for cattle. The Rheas decided to drive through the area and have a look at it before they went home that day. They were in the vicinity of the shopping center when a truck driven by Williams collided with the Rheas' car after the car stalled in the middle of an intersection. The Rheas seek recovery for the damages that arose from the collision.

On appeal, the Rheas' second point of error argues that the trial court erred when it submitted a question to the jury regarding joint enterprise because there was not any evidence to warrant this submission. The Rheas' fourth point of error asserts that the trial court also erred in overruling the Rheas' motion for new trial because the jury's response to the question concerning joint enterprise was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. These two points are closely related and shall be addressed jointly.

■ In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 241 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

■ In order to challenge the submission of a jury question on appeal, the challenge must be based upon an argument of legal insufficiency. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Such points may only be raised on appeal if proper and specific objections were made at trial. *Aero Energy, Inc. v. Circle Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). The record shows that the Rheas properly laid the predicate for appeal on this issue by objecting at trial to the submission of questions from which they now appeal.

Williams requested the jury question regarding joint enterprise which the trial court submitted to the jury. The question read as follows:

Do you find that on the occasion in question, Billie Jo Rhea and Arthur F. Rhea were engaged in a joint enterprise?

A "joint enterprise" exists if the persons concerned have (1) an agreement, either express or implied, with respect to the

enterprise or endeavor, (2) a common purpose, (3) a common business or pecuniary interest, and (4) an equal right to direct and control the enterprise.

Answer "Yes or No."

Answer: Yes

The Rheas complain that Williams failed to meet his burden of proving the existence of joint enterprise because he failed to offer probative evidence supporting this contention.

■ Four essential elements must be proven in order to establish the existence of a joint enterprise:

(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 16–17 (Tex.1974).

■ Examining the facts of this case for the presence of these four elements, we find that all four were shown to exist. An agreement between the Rheas can be implied from their joint travel throughout the day of the collision. The common purpose carried out by the Rheas was the delivery of tax papers to their tax consultant. The delivery of the tax papers concerned their mutual pecuniary interest. Arthur Rhea testified that they were in Fort Worth on "business" the day the accident occurred. It also appears that each of the Rheas had an equal voice in the direction of the events occurring that day. They each attended to personal matters. Billie Rhea purchased some facial cream and Arthur Rhea got a haircut. Billie Rhea drove out to see the shopping center at Arthur Rhea's request. In short, each party had a voice in deciding the day's transactions.

■ The joint enterprise requirements set forth in *Shoemaker* apply to married persons. *Wilkinson v. Stevison*, 514 S.W.2d 895, 898 (Tex.1974). This court is aware that spouses frequently travel together as drivers and passengers. We do not suggest all such excursions are joint enterprises. Caution must be used when deciding whether the four elements required by *Shoemaker* exist. However, when these elements are present as they are in the instant case, we may not ignore them and deny the existence of a joint enterprise because of the marital relationship. *See Wilkinson*, 514 S.W.2d at 898. Our finding of joint enterprise in the instant case does not stem from the Rheas' marital relationship, but upon the specific facts of this case which provided sufficient probative evidence to warrant the submission of the question regarding joint enterprise to the jury.

Additionally, we must also consider whether the jury's response to the joint enterprise question was contrary to the great weight and preponderance of the evidence described above.

■ In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■ The evidence as described above in relation to the submission of this question was more than sufficient to support the jury's finding. The Rheas do not offer evidence which is contrary to it. Thus, we do not find the jury's response to the joint enterprise question was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, the trial court did not abuse its dis-

cretion in overruling the Rheas' motion for new trial on this point.

The Rheas' second and fourth points of error are overruled.

 In view of our findings with respect to points of error two and four, we deem it unnecessary to address points of error one and three. A positive finding with regard to the issue of joint enterprise is sufficient to impute Billie Rhea's negligence to Arthur Rhea and prevent the Rheas' recovery. *See Wilkinson*, 514 S.W.2d at 898. Therefore, any error with respect to either the submission of the agency question or the jury's response to it, is harmless and does not constitute reversible error as a matter of law. The Rheas' first and third points of error are overruled.

The judgment of the trial court is affirmed.

FARRIS, J., dissents.

FARRIS, Justice, dissenting.

I dissent, because the evidence does not support the jury's finding of a business or pecuniary purpose. In *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10 (Tex.1974), the supreme court made a decisive turnaround in the law applicable to joint enterprise, requiring a business or pecuniary purpose, so that "[it would] henceforth be avoiding the imposition of a basically commercial concept upon relationships not having this characteristic." *Id.* at 17. The court would no longer consider such conduct as driving to work, to a dance, going to church, and going to buy groceries to be joint enterprises that would impose liability on the non-driver for the driver's negligence. *Id.* at 16.

*Shoemaker* made it clear that merely a joint interest and equal right of control is not sufficient to impose vicarious liability or impute contributory negligence. *Id.* at 17. The commercial nature of the venture is the key, and it is exactly what is missing from the facts of this case.

The Rheas came to Fort Worth to run errands: Mrs. Rhea picked up facial cream, Mr. Rhea got a haircut, and they delivered

tax papers to their accountant. The majority holds that this last errand involved their pecuniary interest and satisfied this element of *Shoemaker*. "Pecuniary" means "of or relating to money," (*Webster's Third New International Dictionary*, G. & C. Merriam Co., 1981), and would consequently apply to each of the Rheas' errands, but *none* of the errands were of the commercial nature intended in *Shoemaker*. If a mere pecuniary interest met that standard, then purchasing groceries or going to work to earn one's livelihood would still constitute a joint enterprise.

Williams also claimed that Mrs. Rhea was her husband's agent. It was unnecessary for the majority to address this point because of their findings on the joint enterprise theory, but as Williams relies on this in the alternative, I will address it briefly. Williams contends the agency theory is supported by four facts: the Rheas delivering the tax papers; Mr. Rhea getting a haircut; Mr. Rhea being the registered owner of the car; and Mrs. Rhea driving it. In short: the papers concerned *their* taxes; Mrs. Rhea also ran a personal errand; the car registration in Mr. Rhea's name does not overcome the community property presumption; *see* TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1990) and *Austin v. Austin*, 619 S.W.2d 290, 292 (Tex.Civ.App. —Austin 1981, no writ), and finally, Mrs. Rhea testified that her husband always drove their truck, and she always drove their car. There was no agency. Williams' claim that Mr. Rhea had control over Mrs. Rhea assumes the outdated and unacceptable idea that a woman is subservient to her spouse.

I would therefore sustain the Rheas' points of error concerning the lack of evidence to support the agency or joint enterprise theories, and reverse and render judgment based on the remainder of the jury's findings.